UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

YEAGER ASPHALT, INC., and
YEAGER PAVING MATERIALS, LLC,

                    Plaintiffs,                    Case No. 1:20-CV-11022
          v.                                       Hon. Thomas L. Ludington

CHARTER TOWNSHIP OF SAGINAW,

                    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, DENYING
PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL AUTHORITY AS
MOOT, AND DISMISSING THE COMPLAINT**

This matter is before the Court pursuant to the parties' cross-motions for summary judgment. ECF Nos. 12, 13. Plaintiffs Yeager Asphalt, Inc. and Yeager Paving Materials, LLC allege that Defendant Charter Township of Saginaw violated their rights under the Fourteenth Amendment Equal Protection Clause by excluding them from bidding on a contract to the benefit of a competitor. ECF No. 1. For the reasons stated below, Defendant's Motion for Summary Judgment will be granted, Plaintiffs' Motion for Summary Judgment will be denied, Plaintiff's Motion for Leave to File Supplemental Authority will be denied as moot, and the Complaint will be dismissed.

**I.**

**A.**

Plaintiff Yeager Asphalt, Inc. ("Yeager Asphalt") is a paving contactor that performs "almost any type of paving job except for highway[s]." ECF No. 13-1 at PageID.232 (Mark Yeager deposition transcript). Plaintiff Yeager Paving Materials, LLC ("Yeager Materials") is a

manufacturer that produces asphalt for commercial paving.[1] ECF No. 13-2 at PageID.256 (Bradley Lewinski deposition transcript). Yeager Asphalt and Yeager Materials are separate legal entities owned by Mark Yeager. ECF No.13-1 at PageID.233. Yeager Asphalt often sources asphalt from Yeager Materials, but the two have no exclusivity agreement, and Yeager Asphalt sometimes relies on other manufacturers. *Id.*

In 2019, Defendant Charter Township of Saginaw (the "Township") issued a bid request for the "removal and replacement of [the] asphalt shoulder" at 1740 Midland Road, in Saginaw, Michigan (the "Midland Road Project"). ECF No. 12-2 (bid request). The request included a provision stating, "Saginaw Charter Township requires asphalt from Ace-Saginaw Paving Company to meet MDOT specifications and proof of purchase from Ace-Saginaw. If contractor [sic] does not show proof of purchase, Saginaw Charter Township will refuse payment."[2] *Id.* at PageID.82.

Ace-Saginaw Paving Company ("Ace-Saginaw") is an asphalt manufacturer that supplies commercial asphalt to contractors, including Yeager Asphalt. ECF No. 13-1 at PageID.233. Ace-Saginaw operates an MDOT-certified asphalt plant. ECF No. 13-10 at PageID.317 (Ace-Saginaw webpage). In response to an interrogatory, the Township explained that it included the Ace-Saginaw requirement as part of its "determin[ation] that, in order to ensure the quality of asphalt materials used by its asphalt contractors, it would require that asphalt mixes meet MDOT specifications and/or be sourced from an MDOT-certified asphalt plant." ECF No. 12-6 at PageID.99.

Yeager Asphalt did not bid on the Midland Road Project. ECF No. 13-1 at PageID.237. At

---

[1] Yeager Materials does business as "U.S. Paving & Stone Materials," a name which is often mentioned in the briefings and pleadings.
[2] For ease of reference, this specification is referred to herein as the "Ace-Saginaw requirement."

his deposition, Mark Yeager, on behalf of Yeager Asphalt, testified that he first learned of the Midland Road Project when another contractor contacted him about it sometime before the bid was closed. *Id.* at PageID.237. Nonetheless, when asked why Yeager Asphalt did not bid on the Midland Road Project, he stated that it was because the company was not notified of the bid request in time. *Id.* Indeed, in response to a request for admission, Yeager Asphalt asserted that it was ordinary for the Township to notify contractors of bid requests and that, despite this "custom," the Township did not notify Yeager Asphalt of the Midland Road Project. ECF No. 13-6 at PageID.289. The Township's official purchasing policy, however, does not require bid requests to be forwarded to contractors but instead states that for "purchases greater than $500 but less than $10,000, . . . [a] minimum of three (3) quotes shall be obtained either by telephone, personal contact, advertisement, or online." ECF No. 13-3 at PageID.277.

During his deposition, Yeager was asked why the Township might have included the Ace-Saginaw requirement. ECF No. 13-1 at PageID.238. He first speculated that "maybe somebody at Ace [was] giving [the Township] a kickback." *Id.* at PageID.238. He then offered certain hearsay information about Bradley Lewinsky, one of Yeager's salesmen, and Alan Messing, a Township employee that works on bid solicitations. *Id.* at PageID.238. Yeager testified that according to Lewinsky, Messing had been "told by his superiors not to contact [Yeager Asphalt] because they did not want [Yeager Asphalt] to do work with them." *Id.*

Lewinsky was subsequently deposed as a representative for Yeager Materials. When asked about his conversation with Messing, Lewinsky testified that he had met Messing casually at a neighbor's house sometime after this case began. ECF No. 13-2 at PageID.261. Messing apparently told Lewinsky that Messing had prepared the bid request for the Midland Road Project

and that "people above [him]" had instructed him to include the Ace-Saginaw requirement.[3] *Id.* Lewinsky's version of the conversation did not include any mention of Township instructions not to contact Yeager Asphalt.[4] *See id.*

Later in his deposition, Yeager offered three reasons for why, in his opinion, the Township had "excluded" Yeager Asphalt from the Midland Road Project. ECF No. 13-1 at PageID.238–39. First, Yeager Asphalt previously used the wrong asphalt mix in a project with the Township seven or eight years ago. *Id.* at PageID.239. The mistake ultimately caused a "mile of concrete [] to be tore up." *Id.* at PageID.239. Second, Yeager Asphalt again used the wrong asphalt mix in a driveway project with the Township—though, in that instance, Yeager maintained that the fault was that of an unrelated engineer who specified the mix. *Id.* Third, "a few years" before the Midland Road Project, Yeager had sent a letter to the Township complaining that Yeager Asphalt job signs were being taken down. *Id.* Yeager claimed that he and a Township supervisor had a "back and forth" exchange on the issue. *Id.* Yeager admitted, however, that he had no evidence of ill-will and that he was merely speculating. *Id.*

## B.

Three contractors submitted bids for the Midland Road Project. ECF No. 13-5 (Midland Road Project bids); ECF No. 13-8 at PageID.302–03 (Township interrogatory responses). The contract was ultimately awarded to L.M. Satkowiak & Sons, Inc., who bid the project at a cost of $2,340. ECF No. 13-5 at PageID.283; ECF No. 13-8 at PageID.303.

Since the Midland Road Project, the Township has removed the Ace-Saginaw requirement

---

[3]  In response to an interrogatory, the Township identified Herb "Sonny" Grunwell as the Township official who determined that the Ace-Saginaw requirement should be included. ECF No. 13-8 at PageID.302. Grunwell was the former Township Director of Public Services and is now retired. *Id.* It is unclear whether any discovery was sought from Grunwell.
[4]  It is unclear whether any discovery was sought from Messing.

from its bid requests and now simply requires "asphalt mixes that meet MDOT specifications from MDOT certified asphalt plant." *See* ECF No. 13-6 at PageID.290 (Yeager Asphalt admissions); 13-7 at PageID.295 (Yeager Materials admissions); ECF No. 13-9 at PageID.314 (Township bid request). Yeager Asphalt submitted bids on two Township projects after the Midland Road Project. *See* ECF No. 13-9 (Yeager Asphalt bids). A hand-written notation indicates that these bids were received in August 2020. *Id.* at PageID.314.

C.

On April 25, 2020, Plaintiffs filed a one-count Complaint against the Township alleging that Defendant violated of the Equal Protection Clause of the Fourteenth Amendment. ECF No. 1 at PageID.7–8. Plaintiffs argue that by requiring contractors to source their asphalt from Ace-Saginaw, the Township engaged in a kind of economic protectionism that serves no legitimate government interest. As relief, Plaintiffs seek (1) a judgment "declaring the conduct of [the Township] as being unconstitutional," (2) an injunction "to halt and also prevent the future uses of the established bidding processes and procedures which violates [sic] Plaintiffs' equal protection rights," (3) an award of nominal damages, and (4) attorney fees and costs. *Id.* at PageID.8–9. Plaintiffs do not seek damages for lost profits. ECF No. 12 at PageID.73.

The Township filed an answer on June 24, 2020, ECF No. 5, which was subsequently amended on July 14, 2020, ECF No. 7. Discovery was open between July 16 and December 16, 2020. ECF No. 8. The parties filed cross-motions for summary judgment on January 19, 2021. ECF Nos. 12, 13. The Motions have been fully briefed. ECF Nos. 15, 16, 17, 18.

On March 8, 2021, Plaintiffs filed a motion for leave to file supplemental authority, informing this Court of the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, No. 19-968, 2021 WL 850106 (U.S. Mar. 8, 2021). ECF No. 19.

**II.**

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

**III.**

Before addressing the merits of Plaintiffs' equal protection claim, this Court must address the threshold issues of standing and mootness, raised by Defendant in its Motion for Summary Judgment. ECF No. 13 at PageID.213–19.

**A.**

"The threshold question in every federal case is whether the court has the judicial power to entertain the suit." *Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 709 (6th Cir. 2015) (quoting *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997)). "Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual 'case or controversy' exists." *Id.* at 709–10 (quoting U.S. Const. art. III, § 2). "Courts have explained the

'case or controversy' requirement through a series of 'justiciability doctrines,' including, 'perhaps the most important,' that a litigant must have 'standing' to invoke the jurisdiction of the federal courts." *Id.* at 710 (quoting *Magaw*, 132 F.3d at 279). The Supreme Court has enumerated three elements for Article III standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and alterations omitted). "Each plaintiff must have standing for a court to consider that plaintiff's claims." *Solis v. Emery Fed. Credit Union*, 459 F. Supp. 3d 981, 988–89 (S.D. Ohio 2020) (citing *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438, 452 (6th Cir. 2017)).

Federal courts have long scrutinized the standing of contractors that were unsuccessful in winning a government contract—often referred to as "disappointed bidders." *See Perkins v. Lukens Steel Co.*, 310 U.S. 113, 125 (1940) (holding that disappointed bidder for federal contract lacked standing where "neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such"). According to the Sixth Circuit, "unless a party brings a suit under the APA or similar legislation which evinces a congressional intent to create a grounds for standing for a disappointed bidder, [the Sixth Circuit] will not confer standing upon disappointed bidders." *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 294 (6th Cir. 2006), *overruled on other grounds as recognized by Davis v. Prison Health Servs.*, 679 F.3d 433, 442 n.3 (6th Cir. 2012)).

-7-

In *Club Italia*, a contractor expressed its intent to bid on a construction project but asked the township for additional time to prepare the bid given the necessary surveying and designing. *Id.* at 290. The township never responded and subsequently accepted a competitor's bid. *Id.* The contractor thus alleged that the township violated its rights to due process and equal protection. *Id.* The district court held that the contractor lacked standing as a disappointed bidder and granted summary judgment for the township. *Id.* at 292. On appeal, the Sixth Circuit reaffirmed the general rule that absent some legislative ground, disappointed bidders do not have standing; however, the court held that "Plaintiff [could not] be characterized as a disappointed bidder because Plaintiff never actually submitted a bid." *Id.* 294. As the court explained, "refusal to allow Plaintiff to bid on the contract allegedly caused it to suffer an economic injury, since it precluded Plaintiff from being considered for a lucrative contract," which was "sufficient to confer standing." *Id.* (citing *Owen of Georgia, Inc. v. Shelby Cty.*, 648 F.2d 1084, 1089 (6th Cir. 1981)).

Relying on *Club Italia*, Plaintiffs argue that "the irrational unconstitutional bidding practice/policy prevented the participation of Yeager Asphalt to bid." ECF No. 15 at PageID.333. But the Ace-Saginaw requirement did not prevent Yeager Asphalt from bidding; it merely required bidders to source the asphalt from Ace-Saginaw. Yeager Asphalt had sourced asphalt from Ace-Saginaw before, and there is no indication that it was unable to do so for the Midland Project. ECF No. 13-1 at PageID.238. Indeed, at his deposition, Mark Yeager testified that the only reason Yeager Asphalt would not have bid on the Midland Project would have been Yeager's own "business decision" to use Yeager Materials—a company he owns—rather than Ace-Saginaw. *Id.* at PageID.238. Accordingly, Yeager Asphalt lacks standing against the Township and will therefore be dismissed from the case.[5]

---

[5] Insofar as Yeager Asphalt claims that its injury was inflicted by the purported failure of the Township to give notice of the Midland Road Project, that claim must be rejected. First, the Complaint does not even

With respect to Yeager Materials, however, the Township's decision to preclude bidders from sourcing asphalt from Yeager Materials inflicted an economic injury that would seem neither "conjectural" nor "hypothetical" and is "fairly traceable" to the Township. *See Lujan*, 504 U.S. at 560. Nevertheless, the Township argues that this injury is not redressable because the Ace-Saginaw requirement has been removed—rendering declaratory and injunctive relief inapposite—and because nominal damages would represent nothing more than "a paper judgment." ECF No. 13 at PageID.215–16. Even assuming that declaratory and injunctive relief is foreclosed, the Supreme Court recently held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam*, 2021 WL 850106, at *7.[6]  Accordingly, given the request for nominal damages, Yeager Materials has standing against the Township.

## B.

"While standing restricts a party's capacity to bring a lawsuit at the time the complaint is filed, mootness restricts a party's capacity to bring a lawsuit throughout the course of the litigation." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 460 (6th Cir. 2007). "Mootness occurs 'when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' *Id.* (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). "Even when an action presents a live case or controversy at the time of filing, subsequent developments—including the passage of a new law or an amendment to the original law—may moot the case." *Id.*

---

mention the Township's notification practice and instead specifically alleges that Plaintiffs' rights were violated because of the Ace-Saginaw requirement. ECF No. 1 at PageID.8. Second, Mark Yeager testified that he had notice of the bid request for the Midland Road Project before the bid closed, and that nothing within the language of the request forbid Yeager Asphalt from bidding. ECF No. 13-1 at PageID.237–38.

[6] Because this Court takes notice of *Uzuegbunam*, Plaintiffs' Motion for Leave to File Supplemental Authority will be denied as moot.

The Township argues that Plaintiffs' claim is moot because there is no basis for declaratory and injunctive relief and because nominal damages are inadequate. ECF No. 13 at PageID.217–18. Accordingly, as acknowledged in the briefing, the Township's arguments with respect to mootness "parallel those as to why Plaintiffs lack standing due to lack of a redressable harm." *Id.* at PageID.217.

Given the redressability discussion in Section III.A., *supra*, the Township's mootness argument must be rejected. Because nominal damages can redress a completed legal injury for standing purposes, a claim cannot be dismissed as moot because it only seeks nominal damages. *See Uzuegbunam*, 2021 WL 850106, at *7 (reversing Eleventh Circuit's holding that claim was moot). Accordingly, with respect to Yeager Materials, the equal protection claim is not moot.

## IV.

Given the foregoing discussion, the remaining issue is whether either the Township or Yeager Materials is entitled to summary judgment.

Yeager Materials brings its equal protection claim under 42 U.S.C. § 1983. To prevail, Yeager Materials must show (1) that it was deprived of a constitutional right and (2) that the Township is responsible for that deprivation. *Doe v. Claiborne Cty., Tenn. By & Through Claiborne Cty. Bd. of Educ.*, 103 F.3d 495, 505 (6th Cir. 1996).

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was

motivated by animus or ill-will." *Id.*

Yeager Materials argues that the Ace-Saginaw requirement was a form of economic protectionism designed to benefit Ace-Saginaw and therefore lacks a rational basis. ECF No. 1 at PageID.7–8; ECF No. 12 at PageID.73. Yeager Materials' claim is best construed as a "class-of-one" theory given the absence of any suspect class or fundamental right, as well as Plaintiffs' admission that the appropriate standard of review is rational basis. *See Club Italia*, 470 F.3d at 298 ("When a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called 'class of one' theory . . . .").

The Township's Motion for Summary Judgment will be granted, and Plaintiffs' Motion for Summary Judgment will be denied, for two reasons.

First, Yeager Materials has not introduced any evidence that it was singled out for adverse treatment. Indeed, Bradley Lewinski, as representative for Yeager Materials, testified that the Ace-Saginaw requirement excluded other asphalt manufacturers, including "Pyramid Paving" and "Central Asphalt." ECF No. 13-2 at PageID.261. The Sixth Circuit has held that class-of-one claims premised on the special treatment of one party over others are not cognizable. *See Club Italia*, 470 F.3d at 299 ("[T]he absolute most Plaintiff can show is that it was treated similarly to everyone except one party, and that party was simply the beneficiary of special treatment. This does not give rise to an equal protection violation."); *TriHealth*, 430 F.3d at 788 ("In effect, the TriHealth plaintiffs complain not that they were singled out for adverse treatment, but that University Hospital was singled out for beneficial treatment. TriHealth has cited no authority for the proposition that the 'class of one' theory can be used to make out an equal protection violation under such circumstances."). Accordingly, Yeager Materials does not allege a cognizable equal protection claim.

Second, Yeager Materials has not introduced evidence overcoming the Township's "presumption of rationality." *Club Italia*, 470 F.3d at 298. According to its interrogatory response, the Township added the Ace-Saginaw requirement as part of its determination that asphalt for Township projects "[should] meet MDOT specifications and/or be sourced from an MDOT-certified asphalt plant." ECF No. 12-6 at PageID.99. It is undisputed that Ace-Saginaw has an MDOT-certified plant and that Yeager Materials does not. ECF No. 13-2 at PageID.256. Additionally, no reasonable mind could deny that the Township, in contracting for infrastructure projects, has a legitimate interest in high-quality asphalt, and that requiring MDOT-certified asphalt is reasonably related to that interest.[7]

Nonetheless, Yeager Materials maintains that the Ace-Saginaw requirement was pretextual because other manufacturers, including Yeager Materials, produce an asphalt mixture meeting MDOT standards, even if the mixture is not produced in an MDOT-certified plant. ECF No. 13-2 at PageID.258–59. Yeager Materials apparently relies on third-party testing to verify that its asphalt mixture meets MDOT standards. *Id.* at PageID.259. Yeager Materials thus likens this case to *Craigmiles v. Giles*, 312 F.3d 220 (6th Cir. 2002), which held that "protecting a discrete interest group from economic competition is not a legitimate governmental purpose." *Id.* at 224.

In *Craigmiles*, the Sixth Circuit reviewed a Tennessee law forbidding the sale of funeral caskets by anyone other than state-licensed "funeral directors." *Id.* at 222. A group of casket sellers challenged the law on equal protection and due process grounds. *Id.* at 222–23. The district court held for the plaintiffs and entered an order enjoining the state from enforcing the law against them.

---

[7] Plaintiffs repeatedly emphasize that there is no documentary evidence corroborating the Township's reasoning, *see, e.g.*, ECF No. 12 at PageID.75–77, but "[u]nder rational basis review, the defendant has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data." *Club Italia*, 470 F.3d at 298 (internal quotation marks omitted). "[T]he burden falls entirely to Plaintiff to show there is no rational basis, not the other way around." *Id.* at 299.

*Id.* at 223. On appeal, the Sixth Circuit rejected the state's proffered justifications for the law (*i.e.*, promoting public health and safety) as pretextual and affirmed the district court's order. *Id.* at 229. According to the Sixth Circuit, the law represented a "naked attempt to raise a fortress protecting the monopoly rents that funeral directors extract from consumers." *Id.*

As an initial matter, while *Craigmiles* nominally concerned equal protection, subsequent courts have interpreted the case as primarily involving due process. *See, e.g.*, *Merrifield v. Lockyer*, 547 F.3d 978, 985 (9th Cir. 2008) ("Although the casket sellers brought claims under both the Due Process and Equal Protection Clauses, and the Sixth Circuit affirmed on both grounds, their argument was not that they were being treated differently in violation of the Equal Protection Clause, but that they were suffering an unconstitutional barrier to practice their profession—a due process claim."). In fact, the Sixth Circuit has since noted that "while [it] affirmed the district court's finding [in *Craigmiles*] based on substantive due process and equal protection grounds, [it] w[as] primarily focused on rational basis review, which applied to both the substantive due process and the equal protection claims." *Bah v. Att'y Gen. of Tennessee*, 610 F. App'x 547, 555 (6th Cir. 2015) (citing *Merrifield*, 547 F.3d at 985).

To the extent that *Craigmiles* remains controlling, the case is readily distinguishable. Here, unlike in *Craigmiles*, the government action involved no "circuitous path to legitimate ends" or "fortress" of monopoly rents. *Craigmiles*, 312 F.3d at 227, 229. The record indicates that the Township sought high-quality asphalt and limited its bid request to the only asphalt manufacturer that unequivocally operates an MDOT-certified plant.[8] There is no evidence that the Township was motivated by "kickbacks," as Mark Yeager speculated, and Plaintiffs' briefing expressly

---

[8] Bradley Lewinski testified that he "assumed" other manufacturers were MDOT-certified because they worked on highways, but he nonetheless admitted that he "d[id] not know" for certain. ECF No. 13-2 at PageID.258–59.

disavows the notion that the Township had some animus toward Yeager or his businesses. *See* ECF No. 15 at PageID.340 n.11 ("Plaintiffs' representatives speculated that perhaps there was ill-will against them or their owners but there has not been any showing of that."). The only evidence that might support an inference of protectionism is testimony from Yeager and Lewinsky that other asphalt manufacturers could produce asphalt meeting MDOT specifications. ECF No. 13-1 at PageID.240; ECF No. 13-2 at PageID.258–59. But that testimony, even if true, permits several benign inferences, including that the Township simply drafted a bid request that was not as inclusive as it could have been.

It bears emphasizing that rational basis review is "'a paradigm of judicial restraint,' growing out of recognition that 'equal protection is not a license for courts to judge the wisdom, fairness or logic of legislative choices.'" *TriHealth*, 430 F.3d at 791 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *see also Craigmiles*, 312 F.3d at 223–24 ("Even foolish and misdirected provisions are generally valid if subject only to rational basis review."). "[T]he Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010). Consistent with this "paradigm of judicial restraint," this Court declines to find that the Township violated the Equal Protection clause where the Ace-Saginaw requirement, even if unwisely drafted, was reasonably related to a legitimate government interest.

Based on the foregoing, the Township's Motion for Summary Judgment will be granted, and Plaintiffs' Motion for Summary Judgment will be denied.

**V.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 13, is **GRANTED**.

It is further **ORDERED** that Plaintiffs' Motion for Summary Judgment, ECF No. 12, is **DENIED**.

It is further **ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Authority, ECF No. 19, is **DENIED AS MOOT**.

It is further **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED**.

Dated: April 2, 2021                                    s/Thomas L. Ludington
                                                        THOMAS L. LUDINGTON
                                                        United States District Judge

-15-